LEWIS, Grdn., et al., Appellants,

v.

BLAND; City of Akron, Appellee, et al.

[Cite as *Lewis v. Bland* (1991), 75 Ohio App.3d 453.]

Court of Appeals of Ohio,
Summit County.

No. 14974.

Decided Aug. 7, 1991.

*Patrick J. Hart,* for appellants.
*William D. Dowling,* for appellee.

*Per Curiam.*

Plaintiffs-appellants, Harold Lewis, guardian of the person and estate of Brian Scott Lewis, and Lenny Musgrave, appeal the decision of the Summit County Court of Common Pleas granting summary judgment in favor of defendant-appellee, city of Akron.

The complaint alleged, *inter alia,* that Akron police officers negligently initiated a high-speed chase and conducted the chase in a manner which showed a reckless, wanton and willful disregard for the safety of others and was otherwise grossly negligent constituting willful and/or wanton misconduct. The complaint further alleged that as a direct result of the police officers' conduct, Edwin Greer collided into a car operated by Brian Scott Lewis and in which Lenny Musgrave was a passenger. It further alleged that the city failed to adequately train the police officers; failed to enforce its high-speed pursuit policy; and negligently entrusted a police cruiser to the police officers involved in the high-speed chase.

The city filed a motion for summary judgment, claiming that it was not, as a matter of law, liable for any negligence by the officers, under the theory of governmental immunity as provided in R.C. Chapter 2744; that the conduct of the officers did not constitute wanton and willful conduct in response to an emergency call; and that the officers' actions were not the proximate cause of the accident. The motion was accompanied by the affidavit of Officer Stephen Phillips. Phillips averred that on September 2, 1987, at approximately 9:40 p.m., the officers observed a vehicle travelling southbound on Kelly Avenue at a high rate of speed. Officer Phillips made a U-turn and pursued the vehicle. The officers saw the vehicle swerve to avoid a truck and go left of center while navigating a turn. Phillips further averred he activated the lights and flashers, at which time the pursued vehicle began to flee. The officers continued to pursue the vehicle through business and residential areas until the vehicle eventually ran a stop sign at the intersection of Virginia and Archwood, striking the vehicle being driven by Brian Scott Lewis.

The appellants filed a memorandum in opposition to the motion for summary judgment, asserting that there were material facts in dispute concerning the proximate relationship between the police conduct and Greer's driving; the failure to train officers on the high-speed pursuit policy and to enforce the policy; whether the officers were responding to an emergency call; and whether the officers' operation of the vehicle constituted willful or wanton misconduct. Appellants attached affidavits, deposition testimony, answers to interrogatories and other materials obtained through discovery.

On January 4, 1991, the trial court granted the city's motion for summary judgment, finding no evidence that the police officers operated their car in a negligent manner during the pursuit of Greer and, as a matter of law, police officers have no duty to refrain from initiating a chase.

### Assignment of Error I

"The trial court erred in granting summary judgment for the defendant City of Akron."

Appellants contend that the trial court erred in granting summary judgment in appellee's favor. We do not agree and find that the city is entitled to judgment in its favor on the bases of proximate cause and sovereign immunity.

 We agree with appellee's contention that the pursuit of Edwin Greer by the city's police officers was not the proximate cause of plaintiffs' injuries. It is the duty of law enforcement officials who observe reckless motorists to apprehend those motorists who make the highways dangerous to others. *Roll v. Timberman* (1967), 94 N.J.Super. 530, 536, 229 A.2d 281, 284. The proximate cause of an accident in such a situation is the reckless driving of the pursued, notwithstanding recognition of the fact that police pursuit contributed to the pursued's reckless driving. *Id.* When a law enforcement officer pursues a fleeing violator and the violator injures a third party as a result of the chase, the officer's pursuit is not the proximate cause of those injuries unless the circumstances indicate extreme or outrageous conduct by the officer, as the possibility that the violator will injure a third party is too remote to create liability until the officer's conduct becomes extreme. *Dewald v. State* (Wyo.1986), 719 P.2d 643, 650.

As stated by the Supreme Court of Tennessee:

"The duty of police officers is to enforce the law and to make arrests in proper cases, not to allow one being pursued to escape because of the fear that the flight may take a course that is dangerous to the public at large.

"The opposite would, we think, be an unnecessary restriction on the ability of police officers to carry out their duties. In every case where a police officer sought to stop a motorist for a traffic violation, it would become a jury question whether the act of the officer was the proximate cause of any harm the motorist might cause in trying to avoid arrest. In our judgment any police officer would hesitate to make an arrest involving a moving automobile within or close to a city for fear that the subject being arrested would flee and cause harm to others for which the officer might be held responsible." *Nevill v. Tullahoma* (1988), 756 S.W.2d 226, 232.

In the case at bar, a review of the facts demonstrates that it was the reckless driving of Edwin Greer, rather than the officers' conduct, that was the direct and proximate cause of the appellants' injuries. Appellants' argument is that the initiation and the continuation of this chase proximately caused the speeding and recklessness of Greer which in turn led directly to the collision between Greer and the innocent third parties. However, no evidence was presented that suggested the pursuit of Greer constituted extreme or outrageous conduct. *Dewald, supra.* Greer was, however, speeding and swerving in traffic prior to the initiation of the pursuit. That evidence is uncontroverted. We find that construing the evidence most strongly for the appellants, reasonable minds could only conclude that the officers' conduct was not the proximate cause of the accident.

The negligence standard is inapplicable if these police officers are determined to be responding to an emergency. R.C. 2744.02(B)(1)(a). If the officers are responding to an emergency, then the municipality is immune from negligence claims but must respond in damages for willful or wanton misconduct of the officers in the operation of their motor vehicle. Officer Phillips' sworn statement that these officers were responding to an "emergency call" as defined in R.C. 2744.01(A) through the observation of an inherently dangerous situation demanding an immediate response was undisputed. A triable question of fact, therefore, did not exist on this issue. We have previously held that the issue of whether an emergency call situation existed may be determined by summary judgment. *Ladina v. Medina* (Jan. 31, 1990), Medina App. No. 1825, unreported, 1990 WL 7993.

Having found that the officers were responding to an emergency, appellants may still overcome the summary judgment motion if there exists a genuine issue of material fact whether the officers acted willfully or wantonly in the operation of their motor vehicle. R.C. 2744.02(B)(1)(a). Here the evidence presents no genuine issue of fact whether the police conduct was willful or wanton. When police were responding to an emergency, we have found that summary judgment may be appropriate if there existed no evidence of the kind of intentional conduct necessary for willfulness. *Solomon v. Booth* (Jan. 20, 1983), Summit App. No. 10759, unreported, 1983 WL 3947. Such conduct occurs when "the driver of an automobile fails to exercise any care whatsoever toward those to whom he owes a duty of care * * *." *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. The evidence presented to the trial court showed that the pursuit was warranted. The entire pursuit lasted about two minutes. The police used all of their warning devices including lights, sirens and a loudspeaker to warn both the pursued individual and those in the vicinity. We therefore hold

that such evidence leaves only one reasonable conclusion on the issue of willfulness or wantonness and that is adverse to the appellants. The claims that appellants set forth could, at best, rise only to the level of negligence.

The assignment of error is not well taken and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE and COOK, JJ., concur.

CACIOPPO, J., dissents.

CACIOPPO, Judge, dissenting.

In reviewing a summary judgment, a court must follow the standard set forth in Civ.R. 56(C), which specifically provides that before summary judgment may be granted, it must be determined that:

"(1) No genuine issue as to any material fact remains to be litigated;

"(2) the moving party is entitled to judgment as a matter of law; and

"(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

R.C. 2744.02 sets the parameters for the liability of political subdivisions for the tortious acts committed by their employees. *York v. Ohio State Highway Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064. Pursuant to R.C. 2744.02(B)(1), " * * * political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority." R.C. 2744.02(B)(1)(a) further provides that liability does not attach where "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the motor vehicle did not constitute willful or wanton misconduct." As stated in *York* at 144, 573 N.E.2d at 1064:

"In other words, if an officer-employee * * * inflicts injury upon an individual while the officer is operating a motor vehicle during an emergency, and that injury is the result of the officer's negligence, then the agency is immune from liability. However, if the officer operates his motor vehicle in a wanton or willful manner, then immunity does not lie."

Pursuant to these principles, the primary issues before the trial court were the applicable standard of conduct, duty, and causation. If officers are responding to an emergency call, a municipality will not be held liable for negligence which produces injury, death or loss to persons or property, but will be held liable if the officer's conduct is wanton or willful. *Adams v. Peoples* (1985), 18 Ohio St.3d 140, 143, 18 OBR 200, 202, 480 N.E.2d 428, 431.

The question whether an officer is responding to an emergency call is a genuine issue of material fact. *Metsker v. Exline* (Dec. 30, 1986), Franklin App. No. 86AP-717, unreported, 1986 WL 15193. Whether misconduct is willful or wanton is a jury question. *Peoples v. Willoughby* (1990), 70 Ohio App.3d 848, 592 N.E.2d 901, citing *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 214, 23 O.O.3d 224, 226–227, 431 N.E.2d 652, 655. Whether the officers' conduct was negligent and whether the negligence proximately caused the plaintiffs' injuries are also questions of fact. *Stark v. Los Angeles* (1985), 168 Cal.App.3d 276, 284–285, 214 Cal.Rptr. 216, 221–222. Questions concerning such issues as negligence, recklessness and proximate causation are also jury questions. *Kuzmics v. Santiago* (1978), 256 Pa.Super. 35, 41, 389 A.2d 587, 590.

While there may be police chase cases which may be appropriately disposed of through summary judgment, *i.e.*, *Ladina v. Medina* (Jan. 31, 1990), Medina App. No. 1825, unreported, 1990 WL 7993, I do not believe that this is such a case. A review of the summary judgment materials supports this conclusion.

Based upon these principles, there were substantial genuine issues of material fact in the case *sub judice* rendering summary judgment inappropriate. As I believe that the *per curiam* opinion of this court adheres to an outdated perspective of causation which does not recognize that multiple actors can combine to provide causation in a given instance, and fails to recognize the genuine issues of material fact before the trial court, I respectfully dissent.