On this appeal from an order of Judge Kenneth R. Callahan, the majority opinion misconstrues the import of the facts, and misinterprets the statute at issue. I would reverse the grant of summary judgment both because the majority's construction of R.C. 2744.01(A) eliminates the emergency from the definition of emergency call, and because the facts call into question the officer's credibility here, and create a dispute concerning whether the officers were in fact responding to any call to duty at the time of the collision.
Because the majority opinion omits essential details, the facts bear restating: At about 3:30 a.m. on December 6, 1998, Cleveland Police Officer Connors and his partner were investigating suspected drug activity at East 114th Street and Miles Avenue. He and his partner were on Hayes Court, on the west side of East 114th, and used binoculars to observe activity southbound to the corner of Miles.[20] From their position they claim to have observed a man lean into a red Dodge occupied by two white males and saw an exchange of money. Although they did not see any drugs exchanged, Connors and his partner suspected a drug transaction and claim they intended to pursue the suspected buyers. The Dodge turned right onto Miles, westbound. Connors stated he did not pursue it directly but drove his patrol car eastbound out of Hayes Court onto East 114th and turned left just a short distance from its intersection with Harvard Avenue without operating his lights or siren. He claimed he planned to drive westbound on Harvard and parallel to the suspects' car in order to overtake it on East 93rd Street. He testified that he and his partner did not want to stop the Dodge in the East 114th area because they did not want to alert the suspected seller, who they also hoped to arrest after confiscating the drugs believed to be in the car. Connors did not call for backup to aid in apprehending either the suspected buyers or seller.
Connors testified that at the corner of East 114th and Harvard, he brought his vehicle to a complete stop, looked both ways but noticed no traffic on Harvard, entered the intersection intending to turn left and was struck on the driver's side by an eastbound car in the eastbound lane. As a result of the collision, the cruiser traveled north and east across Harvard and struck a billboard located off the roadway. Colbert was driving a 1991 Lincoln Town Car and had the right of way at the time of the collision.
The issue here is whether the undisputed evidence shows that Connors was responding to an emergency call, which is defined in R.C. 2744.01(A) as follows:
 Emergency call means a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer.
R.C. 2744.02(B)(1)(a) provides a defense to negligent operation of a motor vehicle where the officer was responding to an emergency call * * *. Colbert's appeal raises two arguments: first, that a jury could disbelieve altogether the claim that Connors was pursuing any suspects at the time of the accident, and second, that even if the officers were going to eventually intercept the suspects, Connors' pursuit of the alleged drug buyers was not an emergency call pursuant to R.C. 2744.01(A).
The emergency call in this case would be the product of Connors' personal observation of a suspected drug transaction and, thus, Colbert argues, R.C. 2744.01(A) required Connors to observe an inherently dangerous situation demanding an immediate response before he claimed to be responding to an emergency call. The City contends, and the majority agrees, that the definition is not restricted only to those situations that fit the statutory language but instead includes any call to duty, including, but not limited to, those listed.
I do not dispute the fact that an emergency call can include situations not expressly listed in R.C. 2744.01, but I cannot agree that the phrase including, but not limited to allows any call to duty to qualify as an emergency call. If that were so, the statute would not bother to limit the exception to liability whatsoever. An emergency call must be different from an ordinary call.
While it may be too late for judges to correct the interpretational error, the punctuation used in R.C. 2744.01(A) indicates a difference between a dispatch and a personal observation. The statute contains a separate clause defining personal observations by peace officers of inherently dangerous situations that demand an immediate response * * * as an emergency call. The lack of a comma after the phrase personal observations by peace officers indicates the language that follows is uniquely applicable to personal observations, rather than to dispatches or citizen communications, which give rise to an unqualified duty to respond. I submit that courts have ignored this punctuation in order to avoid defining all dispatches, even those that obviously do not require immediate response, as emergencies.[21] Whatever one's position regarding the missing comma, however, the phrase inherently dangerous situations that demand an immediate response * * * remains a part of the definition at some level.
The majority's definition errs by eliminating consideration of this phrase altogether, finding that any call to duty is an emergency call. This cannot be the legislative intent, as a respect for the language of that provision suggests we ask for something more than a generic call to duty when determining whether unlisted circumstances satisfy the definition of emergency call. The phrase including, but not limited to is intended only to avoid making the definition exclusive, while remaining instructional; it is not intended to be all-inclusive, or the legislature would have omitted any reference to emergency whatsoever.
I agree that Ohio courts consistently interpret R.C. 2744.01(A) to allow any urgent call to duty to satisfy the definition of emergency call when the call at issue is a police dispatch.[22] These cases have refused to find that the definition of emergency call requires proof of inherent danger, but have instead focused on the need to accept an urgent dispatch at face value and respond immediately.[23] This law, however, has developed exclusively in situations where officials were responding to dispatches, rather than personal observation.[24] Moreover, while we have determined the issue as a matter of law where an officer is responding to a dispatch and has no personal knowledge of a situation's objective urgency, the existence of an emergency ordinarily is a question of fact.[25] Where the claimed emergency call is not among those listed in R.C. 2744.01(A), but it is nonetheless argued that the facts at issue are included within that definition, courts should not be quick to expand the statutory definition as a matter of law — the existence of an emergency on particular facts should be an issue for a jury.
The majority's construction of the statute effectively eliminates the phrase of inherently dangerous situations that demand an immediate response * * * altogether, violating a fundamental tenet of statutory construction that all words shall be given meaning — we do not assume that legislators include language in a statute simply as window dressing. In an attempt to buttress this offensive construction, the majority claims the existence of a body of case law establishing that an officer's personal observation need not satisfy any test of inherent danger or necessity of immediate response.
Analysis of Ohio law suggests that the term emergency is implicitly understood to exclude at least some calls to duty, and that distinctions are made when an officer is present and has the subjective ability to assess the nature of the situation.[26] In every case where the facts concern police officers' personal observations of alleged emergencies, the existence of danger is apparent, and thus beyond dispute.[27] Such cases generally involve observations of reckless driving, and pursuit is considered necessary in order to remove the dangerous driver from the road.[28]
The only case even suggesting a link between a dispatch and personal observation is Jacobs v. Cleveland, supra. Like many others, the Jacobs court cited the expansive call to duty definition espoused by the Franklin County Court of Appeals in Moore v. Columbus, without recognizing that Moore concerned a police dispatch to a reported burglary in progress.[29] Nevertheless, the Jacobs court did not reach the issue of whether Moore applied to personal observations, because it found the conduct at issue (high speed travel, through two red lights, on an icy road) indisputably dangerous. The majority's citation to Ferrell v. Windham Twp. Police Dept.[30] is equally unconvincing, because that court indicated that the officer observed and responded to reckless driving which, as already discussed, is an act considered to require immediate response because of the danger posed on public roads.[31]
Ohio Supreme Court cases decided prior to the adoption of R.C. 2744.01
defined emergency call with reference to whether the emergency was based on a dispatch or on the officer's personal observation. In Agnew v. Porter, supra, the Ohio Supreme Court explained that a police officer receiving a dispatch cannot be expected to assess the danger of the situation described, but instead must be allowed to respond at face value to the urgent call. As already noted, this distinction has consistently been upheld, as officers responding to urgent dispatches are held to be on emergency calls regardless of the actual state of affairs at the scene.[32] What must be noted, however, is that cases recognizing the special nature of a dispatch necessarily suggest that some other rule applies in other circumstances, otherwise there would be no need to differentiate the dispatch as a special case.
In contrast to dispatch cases, the Ohio Supreme Court found, in Lingo v. Hoekstra,[33] that personal observations could satisfy a statute's definition of emergency call, but refused to delete the requirement of an emergency from that definition. The court stated, as follows:
 The word call, in the phrase, emergency call, in Section 701.02, supra, refers not just to a call in person or by a medium of communication from a citizen, superior officer of the policeman or police dispatcher, but rather to a call to duty. However, the essential question here is: Was this an emergency call, that is, did it arise from such a dangerous situation that it would excuse the defendant from being liable for his negligent conduct which resulted in the injury to the plaintiff?[34]
Prior to its decision in Moore, the Franklin County Court of Appeals followed Lingo's directive in a case based on an officer's personal observation, stating:
 The teaching of Lingo is that, while a police officer's observance of a traffic violator gives rise to a call to duty, not every such call to duty constitutes an emergency call, the existence of the emergency to be determined by the danger involved and the need for immediate action.[35]
Since Moore, the Franklin County Court of Appeals has continued to state that the existence of an emergency is not limited to dangerous situations, but that the question is whether an immediate response is required.[36] While this construction might aid the analysis in dispatch cases, where the officer must only determine whether the call itself requests an immediate response, it states a distinction without a difference in personal observation cases. Where an officer is present, assessing the need for immediate response is hardly distinguishable from assessing the existence of danger, because an immediate response is necessary only to avoid some ill consequence which, for lack of a better term, can be described as danger.
Certainly my brethren would argue that Lingo is not controlling; neither, however, is the vague statutory directive including, but not limited to * * *. Such a phrase cries out for instruction concerning to what, indeed, it is limited. In this respect, Lingo and Agnew come much nearer to controlling authority than Moore, Hall-Pearson v. South Euclid,[37] or other of the majority's body of case law.
Because the definition of emergency call must retain some semblance of the term emergency, lest it be indistinguishable from the definition of the term call, we must again review the facts to determine whether reasonable fact finders could dispute the existence of an emergency. Officer Connors testified that he specifically observed individuals in an attempt to catch them in the act of completing drug transactions on the morning in question. He claims the specific purpose of his actions was to confront the suspects, confiscate the suspected drugs, and make arrests. Without immediate action, he could not confiscate the evidence nor thwart the criminal conduct nor prove it occurred and, therefore, he asserts, there was an immediate need to apprehend the suspects in the Dodge before they disposed of the drugs and then to return to arrest the seller before he left the scene. This rationale, however, must be considered in light of the circumstances and the officers' actual conduct.
Because Connors claimed he needed to catch the suspected buyers without alerting the suspected seller, he testified that he attempted to overtake the suspect car by driving north on East 114th to Harvard and planned to parallel the suspect car westbound for over twenty blocks before catching up with it somewhere on East 93rd Street. (See Map, Exhibit A.) It is unclear how Connors divined that the Dodge, westbound on Miles, would reach East 93rd Street instead of turning onto one of the numerous other streets intersecting Miles between East 114th and East 93rd. Equally unclear is how Connors surmised that the Dodge would proceed northbound on East 93rd from Miles instead of turning southbound and continuing onto Broadway or Turney Road or continuing westbound on Miles to Broadway northbound or Warner Road southbound.
Connors also failed to explain how the suspected seller on East 114th Street would not be alerted to the police presence when Connors' vehicle pulled out of the alley onto 114th Street before attempting to turn onto Harvard, or why he expected the seller to remain in the area indefinitely while he and his partner tracked down the red Dodge, apprehended the suspects, questioned them, searched both them and their car, and took them into custody. Moreover, Connors did not explain why he did not simply back out of Hayes Court onto East 113th Street, proceed south to Miles and follow the red Dodge westbound, or why he did not request the assistance of another zone car to intercept the suspected buyers while he stayed at the scene and questioned the suspected seller. Finally, although Connors testified that suspected sellers frequently swallow drugs when approached by police and that the methods he used were necessary to ensure confiscation of the drugs, he did not explain why the suspected buyers would not do the same thing.
This highly unlikely scenario is so internally inconsistent that it cannot be considered undisputed. Certainly Mr. Colbert cannot present direct evidence rebutting Connors' story, but the testimony itself casts his credibility into question, and should be considered by a jury. The likelihood that Connors' method of pursuit would overtake the suspected buyers, given the configuration of the roadways in the area, is questionable, as is the likelihood that he would be able to confiscate drugs if he actually intercepted the Dodge that morning. Because one might question Connors' testimony concerning his actions in response to his observations, a jury reasonably could question his credibility altogether, and therefore question whether the officers were in fact responding to anything.
As noted, previous decisions defining emergency calls concern officers who are dispatched to certain locations via radio transmissions, with little or no detail concerning the emergent or dangerous nature of the situation. In those situations, we have been loath to require officers to guess at whether the dispatch truly qualifies as an emergency and have, therefore, generally construed police dispatches to require immediate response.[38] This case, however, does not concern a recorded dispatch but only an officer's claimed personal observation of, and claimed response to, suspected criminal activity. Even if one questions whether a jury should have authority to assess the emergent nature of a situation based on an officer's personal observations, in this case there is a material question concerning whether the officers in fact observed any event, and whether they were actually responding to that event at the time of the accident. A jury is uniquely qualified to decide whether Connors' testimony concerning his actions supports the claim that he was pursuing suspects. I would find a material issue of fact in dispute and reverse the grant of summary judgment.
[20] See Map, Exhibit A. Pursuant to Evid.R. 201(F), this court may take judicial notice of the street configuration in this area, and assess Connors' testimony in accordance. State v. Mays (1992),83 Ohio App.3d 610, 614, 615 N.E.2d 641, 644.
[21] See Posner v. Dept. of Pub. Safety, Ohio State Hwy. Patrol (Sept. 29, 2000), Franklin App. No. 99AP-594, unreported (no emergency in responding to accident site where citizens expressly reported no injuries).
[22] Agnew v. Porter (1970), 23 Ohio St.2d 18, 52 O.O.2d 79,260 N.E.2d 830, paragraph two of the syllabus; Moore v. Columbus (1994),98 Ohio App.3d 701, 706-707, 649 N.E.2d 850, 853-854; Pawlak v. Willoughby (Dec. 17, 1987), Cuyahoga App. No. 53181, unreported.
[23] Agnew, supra.
[24] As noted infra, the cases based on personal observation have not contributed to development of the legal issues here because factual danger was proved or not challenged.
[25] Horton v. Dayton (1988), 53 Ohio App.3d 68, 72-73, 558 N.E.2d 79,84-85.
[26] See, e.g., Brockman v. Bell (1992), 78 Ohio App.3d 508, 514
n. 2, 605 N.E.2d 445, 448 n. 2 (response to dispatch is based on subjective belief of urgency, rather than objective facts at scene; citing, inter alia, Agnew and Pawlak, supra).
[27] Lewis v. Bland (1991), 75 Ohio App.3d 453, 457, 599 N.E.2d 814,816; Rodgers v. DeRue (1991), 75 Ohio App.3d 200, 203, 598 N.E.2d 1312,1314; Jacobs v. Cleveland (Dec. 11, 1997), Cuyahoga App. No. 72024, unreported.
[28] Lewis, 75 Ohio App.3d at 456, 599 N.E.2d at 815.
[29] Moore, 98 Ohio App.3d at 703-704, 649 N.E.2d at 851-852.
[30] (Mar. 27, 1998), Portage App. No. 97-P-0035, unreported.
[31] Lewis, supra.
[32] Pawlak, supra.
[33] (1964), 176 Ohio St. 417, 27 O.O.2d 384, 200 N.E.2d 325.
[34] Id. at 421, 200 N.E.2d at 328.
[35] Maxey v. Lenigar (1984), 14 Ohio App.3d 458, 462, 14 OBR 578,471 N.E.2d 1388, 1392.
[36] Posner v. Dept. of Pub. Safety, supra.
[37] (Oct. 8, 1998), Cuyahoga App. No. 73429, unreported.
[38] Pawlak, supra.