SHALKHAUSER, Appellant,

v.

CITY OF MEDINA et al., Appellees.

[Cite as *Shalkhauser v. Medina,* 148 Ohio App.3d 41, 2002-Ohio-222.]

Court of Appeals of Ohio,
Ninth District, Medina County.

Nos. 3238–M and 3249–M.

Decided Jan. 16, 2002.

42

David J. Guidubaldi and Cathleen M. Bolek, for appellant.

Edward G. Kagels and Patrick M. Foy, for appellees.

Stanley Green, for third-party appellee Metrohealth Medical Center.

WHITMORE, Judge.

{¶ 1}   Plaintiff-appellant Paul Shalkhauser has appealed from a judgment of the Medina County Court of Common Pleas that granted summary judgment in favor of defendants-appellees city of Medina and Medina City Police Officer Daniel K. Getto.  This court affirms.

I

{¶ 2}   At approximately 1:20 a.m. on May 27, 1999, Officer Getto was driving his marked police cruiser west on West Smith Road in Medina.  Driving west in front of Officer Getto was a pickup truck, which, it later came to be known, was being operated by Michael J. Leach.  Officer Getto observed that as the pickup truck in front of him crossed over railroad tracks, it veered left of the centerline of West Smith Road and into the eastbound lane, and returned to the westbound lane.

{¶ 3}   Officer Getto entered the license number of the pickup into his onboard computer, from which he learned that there was an outstanding arrest warrant for the owner of the vehicle, Mr. Leach.  Officer Getto decided to initiate a traffic stop and activated his overhead flashing lights.  Instead of stopping, Leach swerved left of center and accelerated past the car in front of him in an attempt to flee from Officer Getto.  Officer Getto then activated his siren and pursued Leach.

{¶ 4}   The Medina Police Department had a fresh-pursuit policy in effect at the time of the pursuit.  In compliance with this policy, Officer Getto established radio communications with his shift commanding officer, Sergeant Horton.  Also pursuant to the policy, Sergeant Horton assumed a supervisory role over the pursuit via radio communications with Officer Getto.  Other members of the Medina Police Department joined Officer Getto in the pursuit of Leach in response to Sergeant Horton's request, and county sheriff's officers also rendered assistance.

{¶ 5} The pursuit continued for approximately eleven minutes, sometimes at speeds in excess of eighty-five miles per hour. The pursuit ended when Leach's pickup collided with a vehicle driven by appellant. Appellant sustained severe personal injuries as a result of this collision.

{¶ 6} Appellant filed an action against the city of Medina and Officer Getto, as well as a John Doe defendant. Appellant's complaint alleged that the defendants' conduct constituted gross negligence and/or willful, wanton, or malicious misconduct, which proximately caused his injuries. Appellees moved for summary judgment on the bases that they were statutorily immune from liability and that they did not proximately cause appellant's injuries.

{¶ 7} The trial court granted appellees' motion for summary judgment. Appellant then filed a "motion for reconsideration" with the trial court, asserting that an Ohio Supreme Court decision issued after the entry of summary judgment for appellees "called the constitutional validity of [sections of the Political Subdivision Tort Liability Act] into question." The trial court denied appellant's motion. Appellant has appealed from the denial of both motions, asserting three assignments of error which this court has rearranged to facilitate review.

## II

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows that a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

## Assignment of Error Number Three

{¶ 9} "The trial court erred in holding that defendants are immune from liability."

{¶ 10} In his third assignment of error, appellant has argued that R.C. Chapter 2744, regarding statutory immunity of political subdivisions, violates Sections 5 and 16, Article I of the Ohio Constitution. Appellant has contended that R.C. Chapter 2744 violates, respectively, his fundamental right to trial by jury and his right to a remedy for injuries by due process of law.

{¶ 11} Appellant did not contest the constitutionality of R.C. Chapter 2744 at the trial court in his memorandum in opposition to appellees' motion for summary judgment.[1] Rather, appellant first raised the issue in a "motion for reconsideration" filed with the trial court after final judgment had been rendered on appellees' motion for summary judgment. A motion for reconsideration of final judgment in the trial court, however, is a nullity. *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 423 N.E.2d 1105. Appellant's failure to timely challenge the constitutionality of the statute in the trial court constitutes a waiver that bars appellant from raising the issue on appeal. *Howard v. Seidler* (1996), 116 Ohio App.3d 800, 815, 689 N.E.2d 572, appeal not allowed (1997), 78 Ohio St.3d 1494, 678 N.E.2d 1230, citing *State v. Smith* (1991), 61 Ohio St.3d 284, 293, 574 N.E.2d 510, certiorari denied (1994), 512 U.S. 1246, 114 S.Ct. 2768, 129 L.Ed.2d 882. Appellant's third assignment of error is without merit.

## Assignment of Error Number Two

{¶ 12} "The trial court erred in finding that no genuine issues of fact remain to be decided by the jury."

{¶ 13} In his second assignment of error, appellant has argued that the trial court erred in granting summary judgment in favor of appellees because there existed genuine issues of fact regarding whether appellees were immune from liability pursuant to R.C. 2744.02 and R.C. 2744.03. Appellant has contended that

---

1. Appellant has cited *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554, for the proposition that three Justices of the Ohio Supreme Court "expressly recognized," after the trial court granted summary judgment in the instant case, that R.C. Chapter 2744 violates the Ohio Constitution. At issue in *Butler* was whether a county's failure to execute its statutory duty to conduct a pre-certification investigation of a day care center precluded the county's immunity, under R.C. 2744.02(B)(5) (precluding governmental immunity where liability is expressly imposed by statute) for a child's death which resulted from mistreatment at the center. Although the plurality opinion, signed by three Justices, criticizes and questions the constitutionality of political subdivision immunity, all seven Justices concur in the judgment that R.C. Chapter 2744 prevails to immunize the political subdivision from liability. *Butler* does not, in any event, compel a reversal on political subdivision immunity grounds of the trial court's grant of summary judgment in this case.

whether appellees' conduct was willful or wanton, as well as the issue of proximate cause, should have been submitted to a jury. However, "just because a particular element of a claim or defense involves a question of fact does not automatically preclude the claim or defense from a determination under summary judgment. The inquiry under summary judgment is whether the moving party has demonstrated the absence of a genuine issue of material fact and, if so, whether the nonmoving party has responded with evidence demonstrating the existence of a genuine issue of material fact." *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, 730, 737 N.E.2d 989. See, also, *Lewis v. Bland* (1991), 75 Ohio App.3d 453, 599 N.E.2d 814; *Jackson v. Poland Twp.* (Sept. 29, 1999), Mahoning App. Nos. 96 C.A. 261, 97 C.A. 13 and 98 C.A. 105, 1999-Ohio-998, 1999 WL 783959 (each affirming summary judgment where no genuine issue of fact existed as to whether police officer's conduct during high-speed pursuit proximately caused third party's injuries).

## City of Medina's Liability

{¶ 14} Determining whether a political subdivision is immune from liability requires a three-tier analysis. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. The starting point is the general rule that political subdivisions are immune from tort liability:

{¶ 15} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

{¶ 16} At the second tier, this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B). Finally, immunity lost to one of the R.C. 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability. *Cater*, 83 Ohio St.3d at 28, 697 N.E.2d 610.

■ {¶ 17} Applying this three-tiered analysis to the instant case, we begin with the general rule that the city, as a political subdivision, is immune from liability for the acts or omissions of its employees in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). Moving to the second tier, the only exception to this immunity relevant to the present case is set forth at R.C. 2744.02(B)(1):

{¶ 18} "Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent

operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority."

{¶ 19} Assuming arguendo that appellant's injuries were "caused by the negligent operation" of the police cruiser driven by Officer Getto,[2] the final step of the analysis reinstates the city's immunity if the city can establish a defense to its liability:

{¶ 20} "The following are full defenses to such [R.C. 2744.02(B)(1) ] liability:

{¶ 21} "(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." R.C. 2744.02(B)(1)(a).

{¶ 22} Assimilating the foregoing provisions, summary judgment on the issue of the city's immunity is proper if reasonable minds could only conclude that (1) Officer Getto was responding to an emergency call, and (2) Officer Getto's operation of his patrol car did not constitute willful or wanton misconduct.

Emergency Call

{¶ 23} An "emergency call" is "a call to duty, including * * * personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of the peace officer." R.C. 2744.01(A).

{¶ 24} The statutory definition does not limit "emergency calls" to occasions of inherent danger or danger to human life. *Moore v. Columbus* (1994), 98 Ohio App.3d 701, 706, 649 N.E.2d 850, appeal not allowed (1995), 72 Ohio St.3d 1422, 648 N.E.2d 514. In determining whether an emergency call exists, "the proper focus should be on all the attendant facts and circumstances leading up to or giving rise to the pursuit, *including* the operation of the fleeing motorist's vehicle during the pursuit." (Emphasis sic.) *Wagner*, 136 Ohio App.3d at 729, 737 N.E.2d 989. In *Wagner*, the court found no genuine issue of fact that the officer's pursuit was in response to an emergency call where the officer initiated a traffic stop of a motorist he suspected of not having a valid driver's license, and the driver ran a red light and fled at high speed. Id.

{¶ 25} This court has previously stated: "It is the duty of law enforcement officials who observe reckless motorists to apprehend those motorists who make the highways dangerous to others." *Lewis*, 75 Ohio App.3d at 456, 599 N.E.2d 814. In the instant case, Officer Getto personally observed appellant veer his

---

2. See this court's discussion of appellant's first assignment of error concerning proximate cause, infra.

truck left of the center line, and attempted to stop appellant after learning of the outstanding warrant for appellant's arrest. In attempting to initiate the stop, Officer Getto activated his siren and flashing lights. Accordingly, reasonable minds could only conclude that Officer Getto was responding to an "emergency call."

## Willful or Wanton Misconduct

{¶ 26} "Wanton misconduct" has been defined as "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." (Citations omitted.) *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 515, 605 N.E.2d 445.

{¶ 27} "Willful misconduct" is " 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.' " (Citations omitted.) Id., quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 527, 37 O.O. 243, 80 N.E.2d 122.

{¶ 28} The exception to immunity set forth at R.C. 2744.02(B)(1) for negligent operation of motor vehicles by employees of political subdivisions has no application to the decisions of Officer Getto and Sergeant Horton to initiate and continue the chase. The R.C. 2744.02(B)(1) exception to political subdivision immunity applies only where an employee *negligently operates* a motor vehicle; decisions concerning whether to pursue a suspect and the manner of pursuit are beyond the scope of the exception for negligent operation of a motor vehicle. See *Rahn v. Whitehall* (1989), 62 Ohio App.3d 62, 574 N.E.2d 567 (affirming dismissal of plaintiff's action where plaintiff alleged police were only negligent or reckless only in the *manner* in which they conducted the chase, but did not allege that the police were reckless in the operation of their motor vehicles—e.g., failed to activate their emergency signals during the pursuit); *Taylor v. Cleveland* (Dec. 17, 1992), Cuyahoga App. No. 63873, 1992 WL 390194 (affirming summary judgment on immunity grounds where plaintiff alleged willful and wanton misconduct only in the officers' initiation and continued pursuit of the fleeing vehicle, but not in the way the officers handled their vehicle during the pursuit). The blanket immunity conferred by R.C. 2744.02(A)(1) in connection with governmental functions therefore applies to the decisions to initiate and continue the pursuit, as one governmental function of the city is "the provision of police services or protection and the regulation of the use of public roads and streets, including the regulation of traffic thereon. R.C. 2744.01(C)(2)(a), (e), and (j)." *Rahn*, 62 Ohio App.3d at 66, 574 N.E.2d 567.

{¶ 29}   Accordingly, to avoid summary judgment, appellant must show the existence of a genuine issue of fact as to whether Officer Getto's operation of his police cruiser during the pursuit of Leach was willful or wanton.   After a thorough review of the record, this court concludes that reasonable minds could only find that Officer Getto's operation of his police cruiser during the pursuit of Leach was not willful or wanton.   The pursuit began at approximately 1:20 a.m. and took place primarily outside the Medina city limits.   Officer Getto activated his overhead flashing lights and siren at the beginning of the pursuit.   Before Leach's collision with appellant, Officer Getto encountered only one or two other vehicles during the chase, both at the beginning of the pursuit.   When Officer Getto encountered stop signs and railroad crossings during the chase, he slowed or stopped his cruiser to ensure that he could clear them safely.   Officer Getto followed Leach at a distance of approximately one-quarter of a mile throughout most of the chase and reached top speeds of between eighty and ninety miles per hour.   At the time of Leach's collision with appellant, Officer Getto was travelling approximately 50 miles per hour.   In view of these uncontroverted facts regarding the chase, appellant has failed to demonstrate the existence of a genuine issue of fact as to whether Officer's Getto's operation of his police cruiser during the pursuit constituted willful or wanton misconduct.

## Officer Getto's Individual Liability

{¶ 30}   R.C. 2744.03(A)(6) sets forth the circumstances under which employees of political subdivisions are immune from civil liability.   In order to defeat summary judgment on his claim against Officer Getto under this statute, appellant must show some genuine issue of material fact as to whether Officer Getto acted with "malicious purpose, in bad faith, or in a wanton or reckless manner":

{¶ 31}   "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶ 32}   "* * *

{¶ 33}   "(6) [T]he employee is immune from liability unless one of the following applies:

{¶ 34}   "* * *

{¶ 35}   "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"   R.C. 2744.03(A)(6)(b).

{¶ 36}   In applying this standard, this court has stated:

{¶ 37} " 'Malice' refers to the willful and intentional design to do injury. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453, 602 N.E.2d 363. 'Bad faith' connotes a 'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.' *Id.* at 454, 602 N.E.2d 363, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus. 'Reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500." *Piro v. Franklin Twp.* (1995), 102 Ohio App.3d 130, 139, 656 N.E.2d 1035.

{¶ 38} Appellant has asserted that, based upon the danger to the public associated with high-speed pursuits, Officer Getto should not have initiated the chase of Leach, and should have abandoned the pursuit long before Leach's collision with appellant. Appellant has further argued that appellees failed to adequately balance (1) the seriousness of Leach's offense which gave rise to the chase, against (2) the danger to the public occasioned by a high-speed pursuit.

{¶ 39} Officer Getto attempted to initiate a traffic stop of Leach after entering Leach's license plate number through his on-board computer and learning that there was an outstanding warrant for Leach's arrest. When Leach failed to pull over and sped away, Officer Getto pursued Leach and advised his supervisor, Sergeant Horton, that he was engaging in a high-speed pursuit. As part of his supervisory role over the pursuit, Sergeant Horton asked the police dispatcher the reason for Leach's outstanding warrant. The dispatcher responded, over the frequency being monitored and used by Officer Getto and Sergeant Horton, that the outstanding warrant was for failure to appear in a neighboring county. The dispatcher also gave a code indicating that police officers from the neighboring jurisdiction would pick up Leach only if he was apprehended in an adjacent county, which in turn indicated that the offense underlying the warrant was minor. Officer Getto did not know, at any time during the pursuit, the specific offense for which Leach failed to appear.[3]

{¶ 40} Officer Getto has not contested that his pursuit of Leach endangered the public or that he was aware of this danger throughout the chase. However, the fact that danger inheres in high-speed chases alone is not sufficient to present a genuine issue of fact concerning whether Officer Getto acted with malicious

---

3. It was ascertained after the chase that Leach had failed to appear to face the charge of squealing his tires, a misdemeanor traffic offense.

purpose, in bad faith, or in a wanton or reckless manner. Nor does appellant's assertion that Officer Getto should have ascertained the reason underlying Leach's failure to appear establish such a genuine issue of fact. The offense for which Leach's outstanding warrant was issued may be one consideration in determining whether to initiate and continue the high-speed pursuit. However, Officer Getto's failure to discover the specifics of the offense underlying the outstanding arrest warrant, in the instant before the pursuit was initiated or while it was in progress, does not create a genuine issue of fact as to whether the pursuit was conducted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 41} Appellant has also argued that the testimony of two expert witnesses is sufficient to create a genuine issue of fact as to whether appellees' conduct gives rise to liability. Appellant's witnesses testified that appellees violated the police department's fresh-pursuit policy, failed to exercise any care for the public during the pursuit, and engaged in conduct that was wanton, reckless, extreme, and outrageous. Appellant fails to appreciate that this testimony does not create any issues of *fact*, but merely states appellant's position with respect to appellees' culpability, which is a legal conclusion. *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 772, 663 N.E.2d 384, appeal not allowed (1995), 74 Ohio St.3d 1456, 656 N.E.2d 951. Nor does appellant's contention that appellees violated the police department's fresh-pursuit policy create an issue of fact for a jury in this case; a violation of an internal departmental procedure is irrelevant to the issue of whether appellees' conduct constituted willful or wanton misconduct. *Rodgers v. DeRue* (1991), 75 Ohio App.3d 200, 205, 598 N.E.2d 1312; *Jackson.*

{¶ 42} Accordingly, having already determined that Officer Getto's operation of his police cruiser during the pursuit did not constitute willful or wanton misconduct, reasonable minds could only conclude that Officer Getto did not act with malicious purpose, in bad faith, or in a wanton or reckless manner.

## Assignment of Error Number One

{¶ 43} "The trial court erred in holding that [appellees'] conduct was not the proximate cause of [appellant's] injuries as a matter of law."

{¶ 44} In his first assignment of error, appellant has argued that the trial court erred in finding, as a matter of law, that appellees' initiation and continuation of the high-speed pursuit was not the proximate cause of appellant's injuries. This court disagrees.

{¶ 45} This court has previously considered the circumstances under which a police officer may be a proximate cause of injuries to a third party who is struck by a vehicle fleeing from the officer. See *Lewis*, 75 Ohio App.3d at 453, 599 N.E.2d 814. In *Lewis*, this court held that even where police pursuit contributes

to a fleeing violator's reckless driving, the proximate cause of a pursued's collision with a third party is not the officer's pursuit, but the reckless driving of the pursued:

{¶ 46} "It is the duty of law enforcement officials who observe reckless motorists to apprehend those motorists who make the highways dangerous to others. *Roll v. Timberman* (1967), 94 N.J.Super. 530, 536, 229 A.2d 281. The proximate cause of an accident in such a situation is the reckless driving of the pursued, notwithstanding recognition of the fact that police pursuit contributed to the pursued's reckless driving." Id. at 456, 599 N.E.2d 814.

{¶ 47} In affirming summary judgment for the defendants, this court held that the police officer's involvement in the pursuit was insufficient to create an issue of fact on the element of proximate cause, in the absence of some evidence that the officer's conduct was extreme or outrageous:

{¶ 48} "When a law enforcement officer pursues a fleeing violator and the violator injures a third party as a result of the chase, the officer's pursuit is not the proximate cause of those injuries unless the circumstances indicate extreme or outrageous conduct by the officer, as the possibility that the violator will injure a third party is too remote to create liability until the officer's conduct becomes extreme." Id.

{¶ 49} Appellant has asserted that there was sufficient evidence before the trial court from which a reasonable jury could conclude that appellees' conduct during the high-speed pursuit was extreme and outrageous. However, having already determined that no genuine issue of fact existed as to whether appellees' conduct was willful or wanton, or was with malicious purpose, in bad faith, or in a wanton or reckless manner, this court finds that reasonable minds could only conclude that appellees' conduct was also not extreme or outrageous. Appellant's first assignment of error is without merit.

### III

{¶ 50} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

BATCHELDER, P.J., and BAIRD, J., concur.