DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas that granted summary judgment to defendants-appellees, the city of Toledo and Lieutenant Randall Pepitone, in an action filed by plaintiff-appellant, Damaris A. Heard, Administratrix of the Estate of Dorothy Faye Hendricks, Deceased. From that judgment, appellant assigns the following as error:
 {¶ 2} "I. The trial court erroneously granted summary judgment in favor of appellees because it misapplied the law on the `emergency call' doctrine to the facts in this case.
 {¶ 3} "II. The trial court erroneously granted summary judgment in favor of appellees because a jury could find the officer's conduct under all the circumstances in this case to be the proximate cause of the death of appellants' [sic] decedent."
 {¶ 4} The undisputed facts of this case are as follows. On September 28, 1999, Todd Johnson sold crack cocaine to an undercover police officer during a "buy/bust" operation in the parking lot of Amigo's Restaurant in Toledo, Ohio. Amigo's is located near the intersection of Door Street and Reynolds Road. While the purchase was being consummated, appellee, Lieutenant Randall Pepitone, was sitting out of sight in a marked patrol vehicle. He was, however, in radio contact with other officers who were monitoring the purchase in unmarked police vehicles. After the purchase was completed, the marked and unmarked police units were to move in to make an arrest. Before an arrest could be made, however, Johnson got into his car. As Pepitone pulled his marked police cruiser into the parking lot, Johnson took off, jumped the curb with his vehicle and headed eastbound on Dorr Street. Pepitone then activated his overhead lights and siren and pursued Johnson at a speed of between 60 and 70 m.p.h. The speed limit on Dorr Street is 50 m.p.h. Pepitone pursued Johnson through two green lights at the intersections of Dorr and Reynolds and Dorr and Richards Road. Shortly after the Richards Road intersection, and approximately two miles east of Amigo's Restaurant, a car driven by Norman Lyons entered Dorr Street and pulled into the left hand lane, the lane in which both Johnson and Pepitone were driving. As the Johnson vehicle approached the Lyons vehicle, the Lyons vehicle began to pull into the curb lane. At that same time, however, the Johnson vehicle also attempted to switch lanes and the Johnson vehicle collided with the rear end of the Lyons vehicle. Dorothy Faye Hendricks, appellant's deceased, was a passenger in the Lyons vehicle and died from injuries suffered in the accident.
 {¶ 5} Johnson was eventually found guilty of involuntary manslaughter in connection with Hendricks' death. On September 24, 2001, however, appellant filed an action in the lower court against the city of Toledo and Lt. Pepitone alleging that Hendricks' death was proximately caused by the reckless, willful and wanton misconduct of Lt. Pepitone in pursuing Johnson for apprehension and arrest. Appellees asserted the affirmative defense of sovereign immunity and filed a motion for summary judgment on that basis. Appellees further asserted that the acts of Johnson, not the conduct of Lt. Pepitone, were the sole and proximate cause of Hendricks' death.
 {¶ 6} On January 14, 2003, the lower court filed a decision and judgment entry granting appellees summary judgment and thereby dismissing appellant's complaint. In pertinent part, the court held that reasonable minds could only conclude that Lt. Pepitone was responding to an emergency call when he gave chase. The court further held that although genuine issues of material fact existed on the issue of whether Lt. Pepitone's operation of the police vehicle in the pursuit of Johnson constituted willful or wanton misconduct, reasonable minds could only conclude that the actions of Lt. Pepitone were not the proximate cause of Hendricks' death. Accordingly, the court held that appellees were immune from liability and thus were entitled to judgment as a matter of law. It is from that judgment that appellant now appeals.
 {¶ 7} In reviewing the ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 8} Appellant's assignments of error require consideration of R.C. Chapter 2744, the Political Subdivision Tort Liability Act. R.C.2744.02(A)(1) provides that a political subdivision is generally immune from tort liability for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of the political subdivision. R.C. 2744.02(B) then lists several exceptions to this general grant of immunity. Under R.C.2744.02(B)(1), a political subdivision may be held liable for injuries caused by the negligent operation of a motor vehicle by an employee when the employee is engaged in the scope of his or her employment. Nevertheless, the political subdivision is immune from the liability imposed by R.C. 2744.02(B)(1) if the alleged negligence occurred when one of its police officers was "operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." R.C. 2744.02(B)(1)(a).
 {¶ 9} The issue raised under the first assignment of error is whether Lt. Pepitone was on an emergency call when the fatal accident occurred. "Emergency call" means "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C.2744.01(A). The trial court determined that reasonable minds could only conclude that Lt. Pepitone was responding to a call to duty when he was informed over the police radio that the drug transaction was complete and that thus, as a matter of law, he was responding to an emergency call when he began his pursuit of Johnson. Appellant now asserts that the trial court's interpretation of the emergency call doctrine was in error. Appellant contends that the emergency call doctrine only applies to inherently dangerous situations and that it does not apply to situations, such as that presented herein, in which the emergency is created by the police officer's own doing.
 {¶ 10} In Colbert v. Cleveland (2003), 99 Ohio St.3d 215,2003-Ohio-3319, the Supreme Court of Ohio held at the syllabus that "As defined in R.C. 2744.01(A), `emergency call' involves a situation to which a response by a peace officer is required by the officer's professional obligation." As the court in Colbert, at ¶ 14, noted, the situation need not be inherently dangerous to demand a response by the officer. Given this definition, it cannot be disputed that Lt. Pepitone was responding to an emergency call under the circumstances of this case. Johnson had just sold crack cocaine to an undercover police officer. Upon seeing Lt. Pepitone's marked police cruiser, Johnson fled the scene in a reckless manner. The trial court, therefore, did not err in concluding that Lt. Pepitone was responding to an emergency call when Hendricks was fatally injured and the first assignment of error is not well taken.
 {¶ 11} In her second assignment of error, appellant asserts that genuine issues of material fact remain regarding whether Lt. Pepitone's conduct was the proximate cause of Hendricks' death. The trial court concluded that although a genuine issue of material fact remained regarding whether Lt. Pepitone's operation of his police cruiser constituted willful or wanton conduct, thereby precluding summary judgment on the defense provided by R.C. 2744.02(B)(1)(a), appellees were entitled to judgment as a matter of law because reasonable minds could only conclude that Lt. Pepitone's conduct was not the proximate cause of Hendricks' death. The lower court based this conclusion on the court's holding in Lewis v. Bland (1991), 75 Ohio App.3d 453. In Lewis, at 456, the court held that "[w]hen a law enforcement officer pursues a fleeing violator and the violator injures a third party as a result of the chase, the officer's pursuit is not the proximate cause of those injuries unless the circumstances indicate extreme or outrageous conduct by the officer, as the possibility that the violator will injure a third party is too remote to create liability until the officer's conduct becomes extreme."
 {¶ 12} Appellant asserts that the "extreme and outrageous" standard for determining proximate cause where a fleeing violator causes injury or death to a third party as a direct result of being pursued by a law enforcement officer is outdated, contrary to sound public policy and should no longer govern Ohio cases. In Leach v. City of Toledo (Jan. 22, 1999), Lucas App. No. L-98-1227, however, we cited Lewis with approval in affirming the trial court's grant of summary judgment to the city on the issue of proximate cause. Leach involved the police pursuit of a suspect who had exited a parking lot at a high rate of speed, subsequently violated several traffic laws, and ultimately struck the victim with his vehicle. Other courts have also followed the Leach standard for proximate cause in cases involving police pursuits that result in injuries to third parties. Shalkhauser v. Medina, 148 Ohio App.3d 41, 2002-Ohio-222; Johnsonv. Patterson (Oct. 27, 1994), Cuyahoga App. No. 66327, Lowry v. Drennen
(Feb. 18, 1993), Franklin App. No. 92AP-1173; Sutterlin v. Barnard (Oct. 6, 1992), Montgomery App. No. 13201.
 {¶ 13} The undisputed evidence in the present case is that Lt. Pepitone initiated the pursuit of Johnson after Johnson sold crack cocaine to an undercover police officer and recklessly exited the parking lot. Lt. Pepitone had his siren and overhead lights activated during the entire pursuit, which lasted approximately two minutes. In addition, traffic along the pursuit route was light, the street was dry, lighting was good and neither Lt. Pepitone nor Johnson ran any red lights or stop signs. Finally, the speeds reached by Lt. Pepitone and Johnson did not exceed 70 m.p.h. The speed limit along the route of the pursuit was 50 m.p.h. Under these circumstances, reasonable minds could only conclude that Lt. Pepitone's conduct was not extreme or outrageous. Accordingly, the trial court did not err in granting appellees summary judgment and the second assignment of error is not well-taken.
 {¶ 14} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.