OPINION
{¶ 1} Appellant, John D. Robertson individually and as administrator of the estate of Joseph F. Robertson ("Robertson"), deceased, appeals the August 22, 2003 judgment entry in which the Trumbull County Court of Common Pleas granted the motion for summary judgment of appellees, Bazetta Township, the Bazetta Township Police Department ("BTPD"), and Officer Nick G. Papalas ("Officer Papalas").
 {¶ 2} On January 11, 2001, Robertson was killed in an automobile accident that occurred during a high speed chase at the intersection of North River Road and Elm Road in Howland Township. Robertson's vehicle collided with an Ohio State Highway Patrol ("OSHP") car operated by Trooper Lee Sredniawa ("Trooper Sredniawa"), who was in pursuit of a fleeing suspect, Colin J. Roberts ("Roberts"). Roberts was traveling at a speed in excess of 100 m.p.h. Officer Papalas of the BTPD was on duty at the Wal-Mart on Elm Road in Bazetta Township, which is north of the Elm Road-North River Road intersection. He overheard Detective Frank Dillon ("Detective Dillon") of the Howland Township Police Department on his portable police radio say that the OSHP was pursuing a fleeing suspect northbound on State Route 46 in Howland Township. Officer Papalas heard that the pursuit was continuing westbound on North River Road. As a result, Officer Papalas decided to proceed to the Elm Road-North River Road intersection. Although his assistance was not requested by Trooper Sredniawa, he related that he made his decision based on his nineteen years of experience as a police officer and based on the Trumbull County Mutual Aid Pact.[1]
 {¶ 3} Trooper Sredniawa stated that he heard Officer Papalas indicate over the radio that he was aware of the chase and was in the area. However, Trooper Sredniawa did not know whether Officer Papalas was joining the pursuit or securing the intersection. He assumed that Officer Papalas was securing the intersection. When Officer Papalas arrived at the intersection, he pulled into the left hand turn lane on Elm Road next to the vehicle driven by Robertson. The traffic light was red. He turned on his siren and lights and attempted to make eye contact with Robertson or his passenger, but he was unable to do so. In his deposition, Officer Papalas stated that he did not get out of his car, roll down his window, use his outside light or portable flashlight, use his external speaker, or move his cruiser over to get Robertson's attention.
 {¶ 4} Also, in his deposition, Officer Papalas initially indicated that he went to the Elm Road-North River Road intersection to secure it. However, as he was questioned further, he admitted that he went to the intersection to join the chase. Officer Papalas further related that the BTPD did not train him in securing intersections or in police chases.
 {¶ 5} As Officer Papalas and Robertson sat at the intersection, the auto operated by Roberts heading westbound on North River Road drove through the intersection passing Officer Papalas's and Robertson's cars. At that point, Officer Papalas considered joining the chase and pulled slightly forward, but then he stopped and waited for Trooper Sredniawa to pass through the intersection. Meanwhile, the traffic light turned green and Robertson proceeded into the intersection and into the path of Trooper Sredniawa's cruiser.
 {¶ 6} In his deposition, Detective Dillon stated that even though Howland Township had jurisdiction over the area, it refused to get involved in the chase because it would have violated the vehicle pursuit policy. Therefore, instead of joining the pursuit, Dillon monitored it from a distance.
 {¶ 7} Chief Charles Sayers ("Chief Sayers") of the BTPD explained in his deposition that it was against BTPD policy and procedure to act without a request from the district that has jurisdiction, i.e., Howland Township, the Trumbull County Sheriff's Department, or the OSHP. According to Chief Sayers, it also violates the Mutual Aid Agreement among the various law enforcement agencies in Trumbull County. He indicated that the Mutual Aid Agreement does not include the OSHP as a party to it. Furthermore, Chief Sayers related that if he was attempting to secure an intersection, he would have placed his car into the intersection to secure it. However, he stated that he received no training and attended no courses on police pursuits or securing or setting roadblocks at intersections. Also, no one in his department had been trained in pursuits or securing intersections.
 {¶ 8} In his deposition, Trooper Sredniawa said that it appeared as though Officer Papalas had traffic contained at the intersection. He further stated that if Officer Papalas had not been at the intersection, he would have slowed down considerably and maybe even stopped depending on the reaction of the traffic. Trooper Sredniawa indicated that he could only see the back two or three feet of Robertson's car because it was shadowed by Officer Papalas's vehicle.
 {¶ 9} On August 29, 2001, appellant filed a complaint asserting various tort claims and seeking a declaratory judgment against Roberts, Safe Auto Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Mutual Group, St. Paul Fire and Marine Insurance Company, Kemper Insurance Companies Risk Engineering Services, Kemper Insurance Companies, and John Does Nos. 1-5.[2] Appellant filed an amended complaint on December 22, 2001, and added Auto-Owners Insurance Company, Owners Insurance Company, and appellees, Bazetta Township, BTPD, and Officer Papalas as defendants.[3] Appellant asserted claims of willful and wanton misconduct and negligence as to appellees. He also challenged the constitutionality of R.C. Chapter 2744, which he did not pursue. Appellant filed a separate lawsuit against the OSHP and Trooper Sredniawa.
 {¶ 10} Appellees filed a motion for summary judgment on January 3, 2003, which was granted on August 22, 2003. It is from that entry that appellant timely filed the instant appeal and now raises a single assignment of error for our review:
 {¶ 11} "The trial court erred by granting summary judgment to [appellees]."
 {¶ 12} Under his sole assignment of error, appellant claims that the trial court erred in granting appellees' motion for summary judgment. Under this assignment of error, appellant raises four issues for our consideration: First, appellant argues that a political subdivision and its officers are immune from misconduct involving police pursuits only if the officer is responding to an emergency call and does not operate his vehicle in a willful or wanton manner. Second, appellant argues that the defenses set forth in R.C. 2744.03 for high level governmental functions do not apply in the instant matter to provide immunity. Third, appellant contends that appellees are not entitled to summary judgment where reasonable minds could find Bazetta Township and the BTPD liable for their own willful or wanton misconduct in failing to provide any training to Officer Papalas in police pursuits during his nineteen years as an officer. Lastly, appellant posits that appellees are not entitled to summary judgment where reasonable minds could find that their willful and wanton misconduct was a proximate cause of Robertson's death.
 {¶ 13} Preliminarily, we note that summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C).
 {¶ 14} If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial.Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party. Civ.R. 56(E).
 {¶ 15} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. In addition, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 16} Bazetta Township is a political subdivision of the state of Ohio. R.C. 2744.01(F). Determining if a political subdivision is immune from liability is a three step process. Shalkhauser v. Medina (2002),148 Ohio App.3d 41, 46, citing Cater v. Cleveland (1998),83 Ohio St. 24, 28.[4] First, the general rule is that the subdivision is immune from tort liability for any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). Second, any immunity which that section grants may be abrogated by one of the five exceptions listed in R.C. 2744.02(B). Lastly, if immunity is lost to an exception, the political subdivision may assert one of the statutory defenses to liability. Shalkhauser, 148 Ohio App.3d at 46.
 {¶ 17} R.C. 2744.02(B)(1) states that: "* * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees [upon the public roads, highways, or streets] when the employees are engaged within the scope of their employment and authority." Here, Bazetta Township may establish a defense to such liability if Officer Papalas was "responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct[.]" (Emphasis added.) R.C. 2744.02(B)(1)(a).
 {¶ 18} An emergency call is defined as "a call to duty, including, but not limited to, * * * police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C. 2744.01(A). Here, it is our view that Officer Papalas was engaged in an emergency call, which is a governmental function creating a presumption of immunity for both him and Bazetta Township.
 {¶ 19} Therefore, summary judgment on the issue of immunity was proper if reasonable minds could only conclude that Officer Papalas's operation of his patrol car did not constitute willful or wanton misconduct, recklessness, or a malicious purpose or bad faith on his part.Shalkhauser at 47.
 {¶ 20} Under Ohio law, an individual is reckless if he commits "an act intentionally or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104-105.
 {¶ 21} In Reynolds v. Oakwood (1987), 38 Ohio App.3d 125, the Second Appellate District ruled that the totality of the circumstances must be considered when determining whether a patrolman's action in responding to an emergency call was wanton misconduct. Specifically, the officer inReynolds continued to accelerate through a red traffic light, but did have his siren sounding and his lights flashing. The trial court, in granting the motion by the city for a directed verdict, held that the police officer's use of his lights and siren negated the claim of willful and wanton misconduct as a matter of law. The court of appeals reversed. In doing so, the court held that:
 {¶ 22} "Unquestionably, the use of lights and a siren is a significant factor to be considered in conjunction with all other circumstances, but the potential absurdity of a steadfast rule denying liability when such devices are used is manifest. * * *
 {¶ 23} "The term `willful and wanton misconduct' connotes behavior demonstrating a deliberate or reckless disregard for the safety of others, but because the line between such misconduct and ordinary negligence is sometimes a fine one depending on the particular facts of a case, it is generally recognized that such issue is for the jury to decide." (Citations omitted.) Id. at 127.
 {¶ 24} In Peoples v. Willoughby (1990), 70 Ohio App.3d 848, a police cruiser skidded sixty-four feet before impacting the plaintiff's vehicle. The cruiser was traveling at approximately 40 m.p.h. in a 25 m.p.h. zone, and the plaintiff claimed that she could not hear the siren or see the lights due to a hedge at the corner of the intersection. This court sustained the jury's verdict and held that what is or is not reckless conduct is an issue of fact for the jury to determine. Id. at 853.
 {¶ 25} By contrast, in Harris v. Kennedy (1996), 116 Ohio App.3d 687, an ambulance driver skidded across snowy/icy pavement and struck the plaintiff's vehicle after using his brakes to decelerate from 10 to 5 m.p.h. The Eighth District held that a mere failure to use emergency lights and a siren does not indicate absence of care or recklessness and affirmed the grant of summary judgment.
 {¶ 26} In the instant matter, the trial court in issuing its summary judgment referenced evidential material to the effect that Officer Papalas took the action he said he took to protect the safety of Robertson and his passenger, coupled with a comment that reasonable minds could only conclude that his conduct was not willful or wanton misconduct. However, it is our position that simply taking some action is not enough to justify a grant of summary judgment.
 {¶ 27} A jury may well find that the action Officer Papalas took was sufficient. Yet, given the testimony, reasonable minds could disagree whether Officer Papalas's actions were reckless or wanton, and whether the issue is one properly determined by a jury. Here, Officer Papalas was in the left hand turning lane of the Elm Road-North River Road intersection with his lights and sirens on blocking Robertson's view of Trooper Sredniawa's cruiser. Robertson was to the right of Officer Papalas's car. The sirens may have impeded Robertson from hearing the sound of Trooper Sredniawa's approaching siren. Also, Officer Papalas stated in his deposition that his intention was to join the pursuit when he heard it over the radio. In addition, he indicated that he did not receive any training or receive any manuals from the BTPD on how to secure an intersection. He explained that he was told "[j]ust to block traffic, you know. I mean, they didn't get out and show you. You know there's no specific training like that, no."
 {¶ 28} Moreover, Officer Papalas avowed that he knew through his scanner that Roberts was traveling at a speed of 100 m.p.h., and that if a car went through the intersection during that pursuit, there was a high probability that someone would be seriously injured or killed. He also acknowledged that he believed Robertson was unaware that the pursuit was underway. Officer Papalas did not attempt to get Robertson's attention in any way by rolling down his window and using his external speaker or by using his outside light or portable flashlight.
 {¶ 29} The testimony of Trooper Sredniawa revealed that it appeared as though Officer Papalas had contained the traffic at the intersection. Therefore, he did not think he had to slow down as he approached the Elm Road-North River Road intersection since Officer Papalas was there securing the intersection. Trooper Sredniawa indicated that his actions would have been different had Officer Papalas not been in the intersection. He would have slowed down considerably or stopped his cruiser before entering the intersection.
 {¶ 30} Therefore, there are genuine issues of material fact as to whether the manner in which Officer Papalas operated his police cruiser was willful and wanton. Appellant's sole assignment of error is sustained, and the trial court's grant of summary judgment is reversed. By reversing the trial court's decision to grant appellees summary judgment, this court is not passing judgment on appellant's claim. Rather, it is our position that the facts of this case raise several questions best suited for a jury's determination.
 {¶ 31} As to the BTPD, it is our position that appellant met his burden that there are genuine issues of material fact as to whether the BTPD was reckless, willful or wanton in failing to provide their officers with any training in police pursuits or securing intersections.
 {¶ 32} We now turn to Bazetta Township's liability for its acts and omissions in connection with the reckless, willful or wanton failure to train one of its employees, i.e. Officer Papalas. See Cater, supra. Here, appellant alleges that Bazetta Township failed to properly train Officer Papalas and failed to implement a policy for securing intersections.
 {¶ 33} On the training issue, Officer Papalas testified that the BTPD did not train him in securing intersections or in police chases. Likewise, Chief Sayers stated that no one in his department, including himself, had been trained in pursuits or securing intersections.
 {¶ 34} In determining Bazetta Township's potential liability, we rely on Cater, supra. A review of Cater, indicates that four of the Justices concurred in the judgment. Justice Pfeifer concurred with Justice Sweeney separately while expressing his renewed concerns regarding the constitutionality of the sovereign immunity statute, and Justices Douglas and Resnick concurred in judgment only. Thus, it would appear as though the judgment in Cater specifically reversed the court of appeals and remanded the matter for a new trial to the trial court. Although the Supreme Court's conclusion can well be characterized as a plurality, it appears that its directive to the trial court included that there was a genuine issue of material fact to be submitted to the fact finder regarding the issue of whether the city of Cleveland was reckless, willful or wanton in its failure to properly train its employees in the phone mechanics involved in placing an expeditious 9-1-1 call. Hence, as an error court, we are bound by that particular aspect of its decision.
 {¶ 35} Based on the foregoing, it is our position that genuine issues of material fact remain as to whether the township itself was reckless, willful or wanton in failing to properly train Officer Papalas.
 {¶ 36} We further note that R.C. 2935.031 provides: "[a]ny agency, instrumentality, or political subdivision of the state that employs a sheriff, deputy sheriff, constable, marshal, deputy marshal, police officer, member of a metropolitan housing authority police force, state university law enforcement officer, or veterans' home police officer with arrest authority under section 2935.03 of the Revised Code or that employs other persons with arrest authority under the Revised Code, shall adopt a policy for the pursuit in a motor vehicle of any person who violates a law of this state or an ordinance of a municipal corporation. The chief law enforcement officer or other chief official of the agency, instrumentality, or political subdivision shall formally advise each peace officer or other person with arrest authority it employs of the pursuit policy adopted by that agency, instrumentality, or political subdivision pursuant to this section." See, also, Wagner v. Heavlin
(2000), 136 Ohio App.3d 719, 736.[5]
 {¶ 37} However, R.C. 2744.02(B)(5) cautions: "[l]iability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term `shall' in a provision pertaining to a political subdivision."
 {¶ 38} Therefore, R.C. 2935.031 cannot be used as an independent basis of imposing liability on the township. Nevertheless, as we have already indicated, a political subdivision is potentially liable for its own acts or omissions in connection with the reckless, willful or wanton failure to train one of its employees in traffic control methods, i.e. specifically in securing intersections. At the very least, disregard of R.C. 2935.031, coupled with other proof, can constitute evidence of a basis for liability on the part of a political subdivision under the exception set forth in R.C. 2744.02(B)(1).
 {¶ 39} In this particular case, there was evidence presented that Bazetta Township failed to properly train Officer Papalas or have a policy in place at the BTPD on how to secure intersections. Hence, it is our position that appellant has met his burden to survive summary judgment as to Bazetta Township.
 {¶ 40} For the foregoing reasons, appellant's lone assignment of error is welltaken. The judgment of the Trumbull County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.
O'Neill, J., Rice, J., concur.
[1] In his deposition, Officer Papalas avowed that he was shown the Trumbull County Mutual Aid Pact when all of the department heads got together and drafted it in the late 80's or early 90's.
[2] Roberts was dismissed as a party on July 18, 2003; Safe Auto Insurance Company and St. Paul Fire and Marine Insurance Company were dismissed on June 27, 2002; Liberty Mutual Fire Insurance Company and Liberty Mutual Group were dismissed on January 15, 2003; Kemper Insurance Companies Risk Engineering Services and Kemper Insurance Companies were dismissed on September 19, 2002.
[3] Auto-Owners Insurance Company was dismissed on January 18, 2002, and Owners Insurance Company filed a motion for summary judgment on April 1, 2002, which was granted on August 22, 2003.
[4] In Cater, the Supreme Court found genuine issues of material fact remained as to whether a political subdivision acted recklessly when the evidence showed that the governmental entity failed to train its lifeguards to use a swimming pool facility's phone lines in order to call 911.
[5] We note that the foregoing statute applies equally to the potential liability of the BTPD.