DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} While fending off some overgrown shrubbery, Sandra Hahn stepped where there was a missing section of sidewalk and fell, breaking her arm. She sued the City of Cuyahoga Falls and the owner of the shrubbery, seeking to recover for her injuries. The trial court denied the City summary judgment, concluding that, because the City's electric department had removed part of the sidewalk to maintain a transformer, it did not have statutory immunity. This Court reverses because the City's maintenance of its sidewalks is a governmental function. It, therefore, has statutory immunity from Mrs. Hahn's negligence claim.
 FACTS {¶ 2} On August 23, 2004, Mrs. Hahn was walking along a sidewalk when she reached a section that was significantly obstructed by an overgrowth of shrubbery. As she attempted to walk past the shrubs, using her left arm to push them aside, she stepped where a section of the *Page 2 
sidewalk had been removed. Because the ground at that spot was a couple inches lower than the sidewalk, she fell and broke her arm.
 {¶ 3} The reason there was no sidewalk where Mrs. Hahn stepped was because of a change the City had made to its electrical system. In the past, there had been an underground transformer at the location. In order to install and access the transformer, the City had removed a semicircular part of the sidewalk along its edge. It had placed a cover over the transformer that was flush with the sidewalk and the ground. In 2000, the City replaced the underground transformer with an above-ground transformer near the same location. The electric department removed the underground transformer and backfilled the resulting hole with dirt. It installed the above-ground transformer on a fiberglass pad between the sidewalk and the street. A section of the tree lawn separated the sidewalk from the new transformer. The City did not replace the part of the sidewalk that it had previously removed. Accordingly, there was a semicircular section of the sidewalk missing when Mrs. Hahn stepped there.
 {¶ 4} Mrs. Hahn sued the owner of the property where she was walking for negligently failing to maintain the shrubbery. She sued the City for negligently modifying the sidewalk. The City moved for summary judgment, arguing it has statutory immunity. The trial court denied its motion, concluding that cutting away the sidewalk was "an act related to the maintenance of the electrical system, not that of the sidewalk." It also concluded that replacement of the underground transformer with an above-ground model related to the maintenance of the City's electrical system. It further concluded that genuine issues of material fact existed regarding whether the hazard was open and obvious. The City has appealed, assigning one error regarding whether it has statutory immunity. *Page 3 
 STATUTORY IMMUNITY {¶ 5} The City has argued that the trial court incorrectly denied it summary judgment because it has statutory immunity under Section 2744.02
of the Ohio Revised Code. In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829 (1990).
 {¶ 6} "Determining whether a political subdivision is immune from liability requires a three-tier analysis." Shalkhauser v. Medina,148 Ohio App. 3d 41, 2002-Ohio-222, at ¶ 14 (citing Cater v. Cleveland,83 Ohio St. 3d 24, 28 (1998)). "The starting point is the general rule that political subdivisions are immune from tort liability." Id.
Section 2744.02(A)(1) of the Ohio Revised Code provides:
 For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
 {¶ 7} "At the second tier, this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)." Shalkhauser, 2002-Ohio-222, at ¶ 16. "Finally, immunity lost to one of the R.C. 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability." Id. (citing Cater, 83 Ohio St. 3d at 28).
 {¶ 8} Applying the three-tiered analysis to this case, this Court notes that the definition of a "political subdivision" under Section 2744.01(F) includes municipal corporations such as the City. R.C. 2744.01(F). Among the immunity exceptions set forth in Section 2744.02(B), *Page 4 
subsection (B)(3) provides that cities "are liable for injury . . . caused by their negligent failure to keep public roads in repair. . . ." R.C. 2744.02(B)(3). This Court has recently held, however, that "sidewalks do not constitute `public roads' for purposes of exempting a political subdivision of immunity. . . ." Snider v. Akron, 9th Dist. No. 23994, 2008-Ohio-2156, at ¶ 17. Accordingly, subsection (B)(3) is not applicable. Subsection (B)(2) provides that cities "are liable for injury . . . caused by the negligent performance of acts by their employees with respect to proprietary functions. . . ." R.C. 2744.02(B)(2). The City, therefore, can be held liable if Mrs. Hahn's injuries were "caused by the negligent performance of acts by their employees with respect to [a] proprietary function." R.C. 2744.02(B)(2).
 {¶ 9} The definition of "governmental function" under Section 2744.01(C)(2) includes "[t]he regulation of the use of, and the maintenance and repair of . . . sidewalks. . . ." R.C. 2744.01(C)(2)(e). It also includes "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." R.C. 2744.01(C)(2)(l). The definition of a "proprietary function" under Section 2744.01(G)(2) includes "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant. . . ." R.C. 2744.01(G)(2)(c).
 {¶ 10} A line foreman for the City's electric department testified at his deposition that, in 2000, the department "[r]eplaced the underground transformer with [a] pad-mount transformer" at the location where Mrs. Hahn fell. He testified that the process involved "taking a transformer that's normally underground, pulling that out, filling that in and putting [an above-ground] transformer on top." The above-ground transformer sits on a fiberglass pad on the ground. He testified that the City's electric department is responsible for maintaining the transformers and pads and routinely inspects above-ground transformers "to make sure that they're still on the *Page 5 
pads or if holes are rusted through to where the public can accidentally be energized, shocked." If one of the pads has sunk, the electric department "would raise them and backfill them and make sure they're level." The electric department is responsible for reseeding the ground after it has replaced an underground transformer with an above-ground one. Replacement of the old transformers is "done as part of [the electric department's] normal upkeep of [the] electrical system in the city[.]"
 {¶ 11} At his deposition, the line foreman gave inconsistent answers about when the semicircular section was cut out of the sidewalk. He initially testified that it "was already done whenever they did the old style transformers." He later agreed that the sidewalk was "cut in that semicircular shape in 2000 so they could access the old transformer." He testified that the City does not have a program to replace sidewalk blocks that have a semicircular cutout in them.
 {¶ 12} The City also submitted an affidavit from the line foreman, averring that "[i]n 2000, the City began replacing many of its underground transformers with above ground transformers." Although removal of the underground transformers and their covers exposed the curved sidewalks, the electric department did not do anything about the sidewalks because "[d]esign, construction and maintenance of sidewalks is not a function of the Electric Department."
 {¶ 13} The City has argued that Mrs. Hahn's complaint is about the City's failure to maintain the sidewalk by replacing the curved sidewalk slab with a straight one. Her focus is on the condition of the sidewalk "and the City's failure to repair what she believed to be a defectively curved sidewalk slab." The City has argued that it is immune for designing its sidewalk to accommodate the cover for the underground transformer. It has also argued that its *Page 6 
replacement of the underground transformer was not maintenance of its electric system, but was the reconstruction of "the public improvement of an electric system."
 {¶ 14} Mrs. Hahn has argued that this case involves more than sidewalk maintenance and repair. She has argued that, under Music Ctrs. Inc. v.Cuyahoga Falls, 9th Dist. 21802, 2004-Ohio-3703, at ¶ 13, this Court must look at the purpose of the activity that caused the hazard. She has noted that the City's reason for removing part of the sidewalk was to provide access to the underground transformer, which she has argued was done for the purpose of operating or maintaining its electric utility. She has also noted that it was electric department workers who removed the underground transformer, who backfilled the resulting hole with dirt, and who reseeded the area with grass.
 {¶ 15} Mrs. Hahn has not established that her injuries were "caused by the negligent performance of acts by [City] employees with respect to [a] proprietary function[.]" R.C. 2744.02(B)(2). The electric department replaced the underground transformer in 2000, four years before she fell. Mrs. Hahn has not alleged that the City negligently installed the above-ground transformer or that it has negligently maintained it. She has merely argued that the City should have replaced the missing part of the sidewalk at the time it replaced the transformer. The City's plan for replacing the transformer, however, did not include replacing sidewalk sections that had been removed. Planning and design decisions regarding public improvements are governmental functions that Mrs. Hahn may not attack. R.C. 2744.01(C)(2)(l).
 {¶ 16} To the extent that the City failed to replace the sidewalk section during the four years after the electric department removed the underground transformer and its cover, this Court concludes that that issue presents a question of sidewalk maintenance and repair. The maintenance and repair of sidewalks is a governmental function for which the City is immune. *Page 7 
See R.C. 2744.01(C)(2)(e). This Court, therefore, concludes that the trial court incorrectly denied the City summary judgment. The City's assignment of error is sustained.
 CONCLUSION {¶ 17} Although a section of the sidewalk was missing because of the City's "normal upkeep" of its electric system, its failure to replace the section was a decision involving sidewalk maintenance and repair. The City has statutory immunity for such decisions and, therefore, is not liable for Mrs. Hahn's injuries. The judgment of the Summit County Common Pleas Court is reversed, and this matter is remanded for entry of judgment in favor of the City of Cuyahoga Falls.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 8 
Costs taxed to appellee.
SLABY, J. CONCURS
 CARR, P. J. CONCURS IN JUDGMENT ONLY *Page 1